UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS PACKARD AND
LEANN PACKARD,

    Plaintiffs,

    v.                                    Case No. C-1-06-760

FARMERS INSURANCE OF COLUMBUS, INC.,

    Defendant.

## **ORDER**

This matter is before the Court upon defendant's Motion for Summary Judgment (doc. no. 38), plaintiffs' Response in Opposition (doc. no. 46), defendant's Reply (doc. no. 50), plaintiffs' Supplemental Memorandum (doc. no. 55) and the Highlighted and Non-Highlighted Proposed Findings of Fact and Conclusions of Law (doc. nos. 39, 45, and 51). Oral arguments were heard on May 27, 2009.

### **I. Procedural and Factual Background**

The plaintiffs, Dennis and Leann Packard, claimed coverage of certain damages caused to their home under a standard flood insurance policy (hereinafter "SFIP") which had been purchased from defendant insurance company, Farmers Insurance Company of Columbus (hereinafter "Farmers"). The claim was denied. Plaintiffs instituted this action in the Court of Common Pleas for Scioto County, Ohio, on October 5, 2006. On November 10, 2006, Farmers filed a Notice of Removal. By Order dated September 28, 2007, the Court found it had jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §4072. Accordingly, the Court denied

1

plaintiffs' request to remand, but allowed them leave to amend their complaint.

In the Amended Complaint, plaintiffs allege that in November, 2005, Dennis Packard and Leann Packard sought to procure insurance to cover their house in the event it suffered the same type of damage from shifting earth after rain they had suffered to other buildings on their property. After explaining their problem to Donna Wolery (hereinafter "Wolery") and Farmers, they were advised to buy a SFIP. Relying on their representation the SFIP would cover the same damage they had experienced, they paid a premium of Six Hundred Thirty-three Dollars ($633.00). When they made a claim under the SFIP for the same damage to the property as before, their claim was denied. The plaintiffs agree that the loss is not insured under the SFIP and now allege only state law claims

In their first claim, plaintiffs contend that defendants negligently misrepresented to the plaintiffs that they needed flood insurance to protect them from their particular loss, and sold plaintiffs the SFIP, which in fact excluded from coverage their particular loss. In their second claim, plaintiffs allege the defendants defrauded them by selling them the SFIP to protect against their particular loss, when in fact the SFIP did not protect against their particular loss. Plaintiffs contend they detrimentally relied on the fraudulent representations made by the defendants.

On May 14, 2008, plaintiffs voluntarily dismissed defendant Donna Worley, leaving Farmers as the sole defendant.

As the basis for its Summary Judgment Motion, Farmers contends that (1) the plaintiffs have no facts to support their allegations of misrepresentation and detrimental reliance and (2) even if the plaintiffs did have such facts, their claims still fail as a matter of law. Defendant contends that it acted as a fiduciary of the Government and the Court is bound to apply federal

law to the claims contained in the Amended Complaint. Farmers claims plaintiffs could not have obtained any other flood policy for their property, and since their flood policy is a codified federal law, they are charged with knowledge of their flood policy as well as a duty to familiarize themselves with its provisions. Based on this, defendant claims the courts have held that there can be no detrimental reliance in the context of the SFIP. Defendant submits that the "Plaintiffs are apparently attempting a specious claim of supposed assurances to an incredibly broad scope of NFIP coverages to escape the statutory and regulatory limits of this federal program."

Plaintiffs respond that their claims stem from negligent misrepresentation or fraud in the procurement of the policy and must be decided under state tort laws. Plaintiffs contend that their claim is not against Farmers acting in any sort of governmental capacity under the National Insurance Program.

## II. Undisputed Facts

1. Plaintiffs are the owners of property located at 4251 State Route 522, Williamsburg, Ohio 45694.
2. When the Plaintiffs purchased the house in approximately 1997, they had a homeowner's policy of insurance for the property with State Farm.
3. In approximately 2002, the detached garage/workshop near the home and a retaining wall were damaged. Plaintiffs made a claim under their homeowners policy to State Farm.
4. State Farm sent an adjuster to the property and denied coverage under their homeowners insurance for the damage to the garage/workshop and retaining wall.

5. After the 2002 event, Mr. Packard fixed the garage and retaining wall. Plaintiff testified that it took nearly two years to complete the work. As part of those repairs, Mr. Packard installed drains to help with the water runoff.

6. After Plaintiffs fixed the property, Mr. Packard approached his agent, Ms. Wolery, in November 2005 to purchase insurance for his house.

7. Mr. Packard explained the damage to the detached garage/workshop and the collapsed wall to Ms. Wolery and inquired as to what type of insurance he could obtain to cover the main home from the same damage. Mr. Packard testified that he explained to his agent that from all the rain from prior years the hillside could not handle it and pushed the garage and the wall between the house and the garage.

8. Mr. Packard informed his agent of the drains he had constructed and drew a sketch in her office indicating the drains and work he had done.

9. While Packard admitted that water was a "big concern" as the underlying cause of future damage to his home because it had shifted the property in the past, he stated that he did not go to her office expressing to her that he had a water problem.

10. During this consultation with his agent, Ms. Wolery informed plaintiff that she did not know what she could get for him and offered to call underwriting at Farmers.

11. Ms. Wolery placed a call to the service person, and plaintiff heard her say "he wants to know if this would ever happen again, could he be covered for his house". Mr. Packard heard her explain the situation he had described to her. Ms. Wolery testified that she was informed that "you could still have flood coverage that will cover water damage to a home if there's an influx of water."

12. When informed that he needed flood insurance, plaintiff was shocked and questioned that advice because he lives on a hillside.

13. Ms. Wolery agreed and called Farmers again. She explained that plaintiff was concerned that flood insurance wouldn't cover him because he lives on a hill and the problem is the hill pushing the property. Again she was informed that water damage to a home even on a hillside could be covered.

14. After these two phone calls, Ms. Wolery recommended the SFIP to Mr. Packard. Convinced that Ms. Wolery had explained his situation correctly and that Farmers responded that "Flood insurance is the only thing that will cover him for what has occurred to him in the past. It has to be flood insurance", he agreed to buy flood insurance.

15. An application for flood insurance with Farmers was submitted. Plaintiff was informed that a geological survey would have to be done, however, no agent of Farmers investigated the residence of the Packards before Farmers issued the insurance and represented to Mr. Packard that the risk would be covered.

16. The Plaintiffs were issued an NFIP Standard Flood Insurance Policy ("SFIP") by Farmers for the property with effective dates of December 23, 2005 to December 23, 2006.

17. The flood policy limits were $122,000 for building and $10,000 for contents, each with a $1,000.00 deductible. The policy number is 87025743562005.

18. Mr. Packard received a copy of his SFIP. Although he did not read it, he believed he was covered for a landslide if it was caused as a result of water.

19. The SFIP at issue is codified in federal law found at 44 C.F.R. Pt.61, App.A(1).

20. The SFIP at issue contains an exclusions section under Article V. Article V( c) sets forth

5

examples of excluded damages caused by earth movement including but not limited to landslide, land subsidence, and subsurface earth movement. See 44 C.F.R. Pt.61, App. A(1), Article V( c).

21. Heavy rains inundated the Ohio area where the Plaintiffs' property was located during February and March of 2006.

22. Mr. Packard testified that he noticed on March 1, 2006 that the garage door of his home had shifted and the steel cable popped that operates the garage door. He also noticed that the ceiling in the garage was cracked and paint chips were on his car. He experienced total loss of his home. Plaintiffs made a claim under their SFIP with their agent.

23. Upon notice of the potential flood loss claim, Farmers contacted Colonial Claims Corporation, an independent adjusting company, which in turn assigned Teresa and Buddy Combs, independent adjusters to assist the Plaintiffs in presenting their flood loss claim.

24. The Combs inspected the property and determined that the property had sustained damages from water, but that the damages that were sustained were not covered under the SFIP. On July 14, 2006, Farmers sent a letter to the Plaintiffs denying their claim based on the exclusion that their flood policy does not cover landslide or settlement/earth movement.

25. The denial was based on the language of the SFIP and an engineer's report dated May 22, 2006 by Brian Webb.

26. Mr. Webb opined that the damages to the Plaintiffs' property were caused by soils pushing against the house and/or hillside creep.

## III. Applicable Law

A. Summary Judgment

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The moving party bears the initial responsibility of instructing the Court on its basis for the motion and demonstrating the absence of a genuine issue of material fact.

The burden then shifts to the nonmoving party who "may not rest upon the mere allegations or denial of his pleading, but . .. must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986)(quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253 (1968)). Once the burden has shifted, the party opposing summary judgment cannot merely reassert its pleadings and previous allegations. It is not sufficient for the nonmoving party to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 (1970)). The Court is not to weigh the evidence and determine the truth of the matter but it is to decide whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party. *Id.* at 249 (citing *Cities Serv.,* 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.,* 391 U.S. at 290, summary judgment may be granted. *Anderson,* 477 U.S. at 249.

In the original Complaint removed from state court, plaintiffs claimed defendant failed to pay a claim under the SFIP policy. This established this Court's federal jurisdiction. In the Amended Complaint, the claim under the SFIP policy is not reiterated and plaintiffs conceded their loss was not covered by the issued policy. The plaintiffs are proceeding only on the state tort claims.

In its Order denying remand, the Court agreed with defendant Farmers that it had acted as a Write-Your-Own (hereinafter "WYO") Program participating in the United States Government's National Flood Insurance Program (herein after "NFIP") pursuant to the National Flood Insurance Act of 1968, as amended (hereinafter "NFIA")(42 U.S.C. § 4001 *et seq.*) The SFIP is incorporated into the Code of Federal Regulations by reference at 44 C.F.R. § 61.13 and 44 C.F.R. Pt. 61, App. A(1), Art. VII(D). Title 42 U.S.C. § 4072 provides that the United States district court for the district in which a property is located has original exclusive jurisdiction over suits related to flood insurance policies carried out in compliance with federal regulations.

The issue for the Court to decide now is whether the claims in the Amended Complaint are governed by federal law. In deciding the Motion to Remand the original complaint to state court, the Court found that federal law preempted the claim under SFIP in the original complaint because it involved claim handling issues. Since plaintiffs have dropped that claim and concede

that the policy does not cover their loss, the Court must decide whether it should exercise supplemental jurisdiction over the state law claims.

Defendant contends the Court is bound by 42 U.S.C. §4013(a), 44 C.F.R. Pt.61, App.A (1) and the reasoning of the courts in *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947), and *Heckler v. Community Health Services of Crawford County*, Inc., 104 S.Ct. 2218 (1984). See also *Richmond Printing L.L.C. v. Director, FEMA*, 2003 WL 21697457 (5th Cir. 7/21/03) No. 02-20223.

The court in *Evanoff v. The Standard Fire Ins. Co.*, 2007 WL 1577744 (N.D. Ohio) found the claim of bad faith breach of insurance contract was intimately related to the WYO's disallowance of the claim. "A state tort claim intimately related to the disallowance of an insurance claim is essentially a contractual claim. " *Id.* at *4. The court discussed the 2000 provision to the regulations that govern SFIPs, which provides:

> This policy and all disputes arising from the handling of any claim under the policy are governed by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C.§ 4001, et seq.), and Federal Common Law.

44 C.F.R. Pt. 61, App. A(1), IX (2006);

In *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51 (1984), the United States Supreme Court discussed preemption when a plaintiff seeks public funds:

> Justice Holmes wrote: Men must turn square corners when they deal with the Government. *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). This observation has its greatest force when a private party seeks to spend the Government's money. Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law; respondent could expect no less than to be held to the most demanding standards in its quest for public funds. This is consistent with the general rule that those

>   who deal with the Government are expected to know the law and
>   may not rely on the conduct of Government agents contrary to law.

*Id.* at 63. All who sought payment from a government backed insurance company, are bound by the regulations, regardless of actual knowledge. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947).

The United States Court of Appeals for the Sixth Circuit held that the handling and denial of the coverage under the SFIP were within the exclusive jurisdiction of the federal district court. *Gibson v. American Bankers Insurance Co.*, 289 F.3d 943, 947 (6th Cir. 2002). The *Gibson* Court found that it was unnecessary to decide whether procurement state law claims are preempted by NFIA, *Id.* at 949-950, but recognized:

> While this circuit has not addressed this issue, most courts have consistently found that NFIA preempts state law claims that are based on the handling and disposition of SFIP claims. *See Novikov v. Allstate Ins. Co.,* No. Civ. S-01-0305 WBS/G, 2001 WL 880852 (E.D.Cal. July 11, 2001) (state law claims of breach of contract, breach of the covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress under an SFIP were preempted by NFIA because applicability of state law would undermine a nationally unified program of flood insurance); *Jamal v. Travelers Lloyds of Texas Ins. Co.,* 129 F.Supp.2d 1024 (S.D.Tex.2001) (claims of breach of duty of good faith and fair dealing and violations of Texas law are preempted by NFIA); *Neill v. State Farm Fire & Cas. Co.,* 159 F.Supp.2d 770, (E.D.Pa.2000) (ex-contractual causes related to the insurance company's claims handling under state law was preempted). Some cases have distinguished between state law claims based on the handling of an SFIP claim and those that are related to the procurement of the policy. *See Messa v. Omaha Prop. & Cas. Ins. Co.,* 122 F.Supp.2d 513, 522-23 (D.N.J.2000) (state law claims were nothing more than disagreement with disposition of SFIP claim and are barred by field preemption under NFIA). Some courts have found that claims relating to the procurement of the policy are not preempted by NFIA. *See Spence v. Omaha Indem. Ins. Co.,* 996 F.2d 793 (5th Cir.1993); *Powers v. Autin-Gettys-Cohen Ins. Agency,* No. CIV. A. 00-1821, 2000 WL 1593401 (E.D.La. Oct.24, 2000). *But see Bleecker v. Standard Fire Ins. Co.,* 130 F.Supp.2d. 726 (E.D.N.C.2000) (no preemption because federal funds would not be used to pay damages for torts committed by WYO companies).

Judge Moore's dissent in *Gibson* is illuminating on the issues raised in this case. In it she recognized:

> Not every lawsuit against a WYO insurer is really a suit against FEMA, with costs to be paid ultimately out of the U.S. Treasury. Although FEMA covers the expenses of WYO insurers in paying out claims and in litigating challenged disallowances in federal court, the NFIA states a clear exception to this rule: [t]he Director of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission.42 U.S.C. 4081( c). Thus, under the NFIA the federal government is not obligated to indemnify WYO insurers for state-law tort liability arising from their handling of flood insurance claims. To put the matter simply, federal funds are not at stake in cases such as this, and thus the tort claims pleaded by the Gibsons should properly be considered state-law tort claims rather than federal-law contract claims, even under the reasoning of *Van Holt*.

*Gibson*, 289 at 951. *See also, Oaks v. Allstate Insurance Company*, 2006 WL 3328179 (E.D.Ky).

In *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161 (3rd Cir.1998), the Third Circuit court analyzed a case in which homeowners brought suit alleging that their flood insurer violated New Jersey's Consumer Fraud Act in its investigation and adjustment of a claim. The court stated that the statute provides that an insured may sue FEMA if it adjusts a claim and improperly refuses to pay benefits. *See* 42 U.S.C. § 4072. *Id* at 166. Further, it found the NFIA provides subject-matter jurisdiction for an insured's suits against a WYO arising out of a disputed flood insurance claim though the plain text appears to restrict the reach of § 4072 to suits against FEMA. *Id.* It stated: "we now hold that 42 U.S.C. § 4072 vests district courts with original exclusive jurisdiction over suits by claimants against WYO companies based on partial or total disallowance of claims for insurance arising out of the National Flood Insurance Act. *Id.* at 167.

The *Van Holt* court found:

> Most importantly, federal funds are at stake in this suit. Congress would want federal courts to adjudicate disputes over federal flood insurance policies for which the federal government would be responsible for reimbursing the WYO company if the claimant prevails. Although the Van Holts' claims sound in tort, their causes of action alleging impropriety in the investigation and adjustment of their insurance claim are intimately related to the disallowance of their insurance claim.

*Id.* at 167.

This Court noted in its Order denying remand:

> Federal regulations and Courts point out that damages caused by the negligence of agents are not reimbursable from the federal treasury. "Further, (i) if the claim against the Company is grounded in actions significantly outside the scope of the Arrangement or (ii) if there is negligence by the agent, FEMA will not reimburse any costs incurred due to that negligence." 44 C.F.R. Pt. 62, App. A, Art. IX. Courts interpret this provision to mean that federal funds are not implicated when claims are based on errors by the insurance agent. *Landry v. State Farm Fire and Casualty Co.*, 428 F.Supp.2d 531 (E.D.La. 2006). Because of the devastation in the areas near New Orleans resulting from Hurricane Katrina, and the subsequent legal battles, the Eastern District of Louisiana has addressed the dichotomy between handling and procurement on a number of occasions. Repeatedly it has been found that federal jurisdiction is not present in procurement-type cases. *Id.* See also *Seruntine v. State Farm Fire and Casualty Co.,* 444 F.Supp.2d 698 (E.D.La. 2006), *J&P Drugs, Inc. v. Continental Casualty Insurance Co.,* 2007 WL 458210 (E.D.La. 2007), and *In re Katrina Canal Breaches Consolidated Litigation*, 2007 WL 60969 (Slip Copy) (E.D.La. 2007)

(See doc. no.15, p.4)

All the arguments asserted by defendant in support of Summary Judgment are based upon the preemption of federal law. The Court recognizes that Congress delegated to FEMA the authority to provide by regulation for the scope of coverage to be afforded by the SFIP, however, the plaintiffs do not complain about the handling and/or disposition of the SFIP claim. They complain about being advised to purchase the policy. The cases relied upon by defendant, and

12

which form the basis for the theory that there can be no reliance on agents, are based on the assertion that government money will be paid out on the claim at issue. In this case, in which plaintiffs have alleged only state law claims against Farmers, defendant would not be reimbursed from FEMA coffers. These claims are not intimately related to the WYO's disallowance of the claim. The Court finds that the claims are not preempted under any of the factors enunciated in the cases.

Accordingly, defendant's arguments for summary judgment that plaintiffs' claims are preempted and that, even if plaintiffs do have facts supporting their state law claims, their claims still fail as a matter of law, are denied.

This does not end our consideration of this case.

Federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists. *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998); *Meals v. City of Memphis*, 2008 WL 701583 (W.D.Tenn. 2008). With the filing of the Amended Complaint and the findings contained in this Order, the Court must analyze whether it retains jurisdiction over this action.

Federal question jurisdiction exists only when the "well-pleaded complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983). The Court has found, in this Order, that federal law does not create the claims raised in plaintiffs' Amended Complaint, nor does their right to relief depend on a resolution of a substantial question of federal law. Plaintiffs are residents of Ohio and Farmers is incorporated in Ohio. There is, therefore, no

13

diversity or federal-question jurisdiction.

In *Taylor v. First American Bank-Wayne*, 973 F.2d 1284 (6th Cir. 1992), the plaintiffs filed a complaint in state court, alleging, *inter alia,* a claim under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* As plaintiffs' ECOA claim provided federal jurisdiction under 28 U.S.C. § 1331, this action was removed to the United States District Court, Eastern District of Michigan. Plaintiffs filed an Amended Complaint alleging only state law claims. The district court denied plaintiffs' motion to remand, granted the summary judgment to some defendants, and dismissed the remaining claims against others, without prejudice.

As discussed by the *Taylor* court:

> Generally, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966); *see also Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir.1987) (where sole federal claim is dismissed under Fed.R.Civ.P. 12(b)(6), remaining pendent state claims should be remanded to state court). However, there is no mandatory rule. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); *Rosado v. Wyman,* 397 U.S. 397, 403-05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970). *Gibbs* "simply recognizes that" when "all federal claims are eliminated before trial, the balance of factors ... under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.
>
> "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Baer v. R & F Coal Co.,* 782 F.2d 600, 603 (6th Cir.1986) (quoting *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139); *Roberts v. Troy,* 773 F.2d 720, 726 (6th Cir.1985). "[T]rial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed." *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir.1991) (quoting *Province v. Cleveland Press Publishing Co.,* 787 F.2d 1047, 1055 (6th Cir.1986)).

973 F.3d at 1287.

In *Carnegie-Mellon University v.Cohill*, 484 U.S. 343 (1988), the United States Supreme

Court addressed a case in which plaintiffs had filed a complaint containing claims of age discrimination and other state law claims in state court. The defendant removed it to Federal Court. The district court allowed plaintiffs to file an amended complaint, in which they dropped their claim of age discrimination . The district court remanded the remaining claims to the state court in which plaintiffs had originally filed. Noting that it was resolving a split among the Circuits as to whether a district court has discretion to remand a removed case to state court when all federal-law claims have dropped out of the action and only pendent state-law claims remain, the Supreme Court affirmed the remand. 484 U.S. 350. The Court discussed *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), the decision from which it found the "modern doctrine of pendent jurisdiction stems. 484 U.S. at 348. The *Carnegie-Mellon* court explained:

> At the same time, however, *Gibbs* drew a distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power. The *Gibbs* Court recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. For this reason, *Gibbs* emphasized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Ibid.* Under *Gibbs,* a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction. . . *id*. at 726-727.

484 U.S. at 349-50.

Pursuant to 28 U.S.C. § 1447( c), passed subsequent to *Carnegie-Mellon*, cases originally filed in state court must be remanded if, at any time before final judgment it appears that the district court lacks subject matter jurisdiction.

15

## IV. Analysis

The claims alleged in the Amended Complaint are not intimately related to the NFIP policy. The plaintiffs allege fraud in the procurement of the insurance policy. As noted by the defendant, courts often do not find preemption in procurement cases. This is a procurement case. The plaintiffs make no claim under the SFIP. All the claims in the case are state law claims which defendant removed to this Court. This Court could exercise pendant jurisdiction, however, defendant agrees that payment would not come from the federal government if there was a judgment for fraud and/or negligent misrepresentation, the only possible judgments in this case.

In this case, the relevant factors militate in favor of remanding the case to state court. Title 28 U.S.C. § 1447( c) strongly suggests remand. The case was filed in state court and removed to this Court. Pursuant to the findings in this Order, no federal subject-matter jurisdiction remains. The state court is best-equipped to try the case. Remand will not cause undue inconvenience to either party. The costs and expenses accompanying the trial would be less in the local state court rather than in the federal court located in Cincinnati. Remand is most economical for the parties. The state court claims were first addressed in the Motion for Summary Judgment. The parties have not exerted significant time or effort addressing the state law causes of action. *See Bauer v. Trimble*, 2007 WL 2344808 (N.D.Ohio). All discovery completed in this Court will be available to the parties in state court. The court has made no procedural or substantive rulings that the parties would have to relitigate in state court. Weighing the values of judicial economy, convenience, fairness, and comity, the Court finds that retaining jurisdiction in this case would not serve any significant interest. The interests of federalism and comity favor remanding the case.

This action is better suited for determination before the state court.

## V. Conclusion

Accordingly, defendant's Motion for Summary Judgment requesting dismissal of the state law claims is **DENIED WITHOUT PREJUDICE** and the case is **REMANDED** to the Court of Common Pleas for Scioto County, Ohio. The Clerk of Court is directed to transfer the case.

**IT IS SO ORDERED**.

                                                s/Herman J. Weber
                                    HERMAN J. WEBER, SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT